## PROMISSORY NOTE

**Newport, Rhode Island**  $550,000.00
June 12, 2008

  **FOR VALUE RECEIVED**, the undersigned, **EDWARD MARANDOLA, JR.**, of Newport, Rhode Island,(hereinafter "Maker") promises to pay to pay to the order of **KENNETH J. ALVES**, of Portsmouth, Rhode Island (hereinafter "Holder") the principal sum of Five Hundred Fifty Thousand and 00/100 ($550,000.00), plus interest.

  Interest will be charged on unpaid Principal until the full amount of the Principal has been paid. I will pay interest at the initial yearly rate of twelve (12%) . The interest rate I will pay may change monthly as hereinafter described. Interest will be charged on the basis of a twelve month year and a thirty day month.

  The interest rate required is the rate I will pay both before and after any default described in this Note.

  The interest rate I will pay may change on the 12th day of July, 2008 and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date". The new rate of interest will become effective on each Interest Change Date.

  My lifetime maximum interest rate limit is twenty-one (21%) percent, called "Lifetime Rate Cap".

  Beginning with the first Interest Change Date, my interest rate will be based on an "Index". The Index is the prime rate of interest as published in the Wall Street Journal.

  The Holder will calculate my new interest rate by adding seven percentage points, called the "Margin", to the Current Index. Subject to the limit stated above, the result of this calculation will be my new interest rate until the next Interest Change Date.

  If Holder fails to utilize the entire interest rate increase to which he is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Holder may not, at a later date, "carryover" or add interest to which he is not entitled under this Note on any Interest Change Date.

  The Holder may choose an alternative index to be the Index if the Index is no longer available. For purposes of this Section, the Index is not "available" if: (a) the Index is for any reason no longer published; or (b) the Holder, at his sole discretion, determines

that the Index is calculated in a substantially different manner or based on substantially different information then at the time the Index became applicable to this Note; or (c) applicable laws or regulations prevent the Holder from using the Index to calculate interest under this Note. The selection of the alternative index shall be at Holder's sole discretion.. The Holder will give me notice of the alternative index.

I will pay interest only payments every month. I will make my monthly payment on the 12th day of each month being July, 2008. I will make these payments every month until I have paid (i) all the interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If on June 12, 2010, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make monthly payments at 24 Bayview Avenue, Portsmouth, Rhode Island or at a different place if required by notice from the Holder.

Each of my initial monthly payments will be in the amount of $5,500.00.

The Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice" before each Payment Change Date. If for any reason, Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Holder may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Holder responsible for any damages to me which may result from Holder's failure to make the adjustment and to let the Holder, at his option, apply any excess monies which I may have paid to the partial prepayment of unpaid Principal.

**I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL BEFORE IT IS DUE IS CALLED A "PREPAYMENT". WHEN I MAKE A PREPAYMENT, I WILL TELL THE HOLDER IN WRITING THAT I AM DOING SO. I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR AMOUNTS OF MY PAYMENTS UNLESS THE HOLDER AGREES IN WRITING TO THOSE CHANGES. MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY PAYMENTS AFTER THE FIRST PAYMENT CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT.**



If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded by me. The Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

If the Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Holder. The amount of the charge will be five (5%) percent of my overdue payment of interest only. I will pay this late charge promptly but only once on each late payment.

I will be in default if (a) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Agreement; or (iii) I have made any other statement to Holder in connection with this loan that is materially false or misleading.

If I am in default, the Holder may send me a written notice, called "Notice of Default" telling me that if I do not pay the overdue amount by a certain date, the Holder may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Agreement.

Even if, at a time when I am in default, the Holder does not require me to pay immediately in full as described above, the Holder will still have the right to do so if I am in default at a later time.

The Holder will have the right to be paid back by me for all of his costs and expenses in enforcing this Note to the extent no prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or mailing it by first class mail to me at 36 Beacon Hill Road, Newport, Rhode Island 02840 or at a single alternative address if I give the Holder notice of my alternative address. I may give Holder notice of a change in my address in writing, by certified mail. I may designate only one mailing address at a time for notification purposes, other than a copy of all notices should also be sent to my attorney,

Joshua Teverow, Esquire, 55 Pine Street, Providence, Rhode Island 02903.

Except as permitted above for changes of address, any notice that must be given to the Holder under this Note will be given by mailing it, by certified mail to the Holder at the address stated above or at a different address if I am given notice of that different address.

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Holder to give notice to other persons that amounts due have not been paid.

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Holder security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following:

Holder may, at his option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Holder's prior written permission. Holder also may, at his option, require immediate payment in full if Maker is not a natural person and a beneficial interest in Maker is sold or transferred without Holder's prior written permission. However, Holder shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If the Holder exercises the option to require immediate repayment in full, Holder will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Holder may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

This Note is governed by and construed under the laws of the State of Rhode Island. In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

In the event the Holder at any time discovers that this Note or the Security Instrument or any other document related to this Loan, called collectively the "Loan Documents" contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Holder, to

reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not holder the Lender responsible for any damage to me which may result from any such error.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Holder delivers to me an indemnification in my favor, signed by the Holder, then I will sign and deliver to the Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

**IN WITNESS WHEREOF,** I have hereby set my hand and seal the date and date first written above.

_____          _____
Witness                                              Maker

Kdunn\notes and mortgages\Alves interest only note